## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DEANA GONZALES-SARGENT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No. SA-06-CA-0355-XR** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On this date, the Court considered the Memorandum and Recommendation of the United States Magistrate Judge and Plaintiff's objections thereto. Plaintiff appeals from the Commissioner's denial of disability insurance benefits and Supplemental Security Income disability benefits. The Appeals Council denied Plaintiff's request for review, making the determination of the ALJ the final decision of the Commissioner. The Magistrate Judge recommends that the Commissioner's decision be affirmed. After careful consideration, the Court will ACCEPT the recommendation, and AFFIRM the Commissioner's denial of benefits.

### I. Factual and Procedural Background

Plaintiff Deana Gonzales-Sargent protectively filed an application for disability insurance benefits and Supplemental Security Income disability benefits on June 23, 2003, alleging April 1, 2003 as her onset date of disability. Tr. 56-58, 262-64. Plaintiff was a 36-year-old female with a high school equivalency (GED) education and with past relevant work experience as a secretary at a law firm, a secretary at a pest control company, an assembler, a housekeeper, and a cashier/floor

1

stocker at a thrift store.  Her claims were denied initially and on reconsideration.  On July 6, 2005, a hearing was held before the Administrative Law Judge (ALJ), at which Plaintiff appeared with her attorney and testified.  The ALJ called Alice Cox, M.D., to testify as a medical expert.  Vocational expert Patricia Collins also appeared at the hearing but did not testify.

On November 8, 2005, the ALJ issued her decision, concluding that Plaintiff was not disabled.  Tr. 13-28.  At the first step of the five-step sequential evaluation process of disability, the ALJ found Plaintiff had not engaged in substantial gainful employment since her alleged onset date.  At the second and third steps of the evaluation process, the ALJ determined, after reviewing the objective medical evidence, including the testimony of a medical expert, that Plaintiff has the following severe physical impairments: diabetes mellitus type II and mild degenerative disk disease, but that these impairments do not, either singly or in combination, meet or equal a listed impairment.  The ALJ concluded that Plaintiff's depression, anxiety, and carpal tunnel syndrome are not severe impairments.  "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

At the fourth step of the sequential evaluation process, the ALJ assessed Plaintiff's residual functional capacity (RFC) and the demands of her past work based on the severe impairments of diabetes mellitus type II and mild degenerative disk disease; the ALJ did not explicitly consider the allegedly non-severe mental impairments when assessing the RFC.  The ALJ found that Plaintiff retained the RFC to perform a full range of light work and that Plaintiff is able to perform her past relevant work as a secretary, assembler, housekeeper, and cashier/stocker; therefore she is not

disabled.[1]   The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

Plaintiff filed this suit seeking judicial review of the Commissioner's decision.  While she acknowledged she had no complaint concerning the ALJ's assessment of her physical impairments, she asserted that the ALJ should have found that her mental impairments–depression and anxiety–are severe.  In her opening brief, Plaintiff argued that the ALJ erred in: (1) relying on evidence outside the record in ruling at the second step of the sequential evaluation process that Plaintiff's mental impairments are not severe; and (2) failing to properly assess the opinions of two state agency medical consultants who found that Plaintiff's mental impairment is severe.

As to the first error Plaintiff alleges the Commissioner supplemented the transcript with the pages cited by the ALJ which were not included in the original transcript.

As to the second error Plaintiff alleges that the ALJ should have accorded more weight to the opinions of the state agency medical consultants than to the opinion of the medical expert who testified that Plaintiff's mental impairments are not severe.  Plaintiff noted that 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) require an ALJ to explain in her decision the weight given

---

[1]The regulations define "light work" as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or legal controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

to the opinions of state agency medical consultants, unless the treating physician's opinion is given controlling weight. Plaintiff claimed that she was prejudiced by this alleged error because, had the ALJ found that her mental impairments are severe, she could not have concluded that Plaintiff is able to return to her past relevant work based on an RFC assessment that did not take into account her severe mental impairments. She asserted that the ALJ should have reached the fifth step of the evaluation process, requiring the ALJ to present vocational testimony concerning other jobs in the national economy which Plaintiff is capable of performing.

The Magistrate Judge issued a Memorandum and Recommendation (M&R) in this case recommending that the Commissioner's decision be affirmed. The Magistrate Judge concluded that sufficient evidence in the record existed to support the finding that Plaintiff's mental impairment is not severe. The Magistrate Judge also found that while the ALJ remained obligated, despite the non-severity finding, to consider the evidence of the degree of Plaintiff's mental condition in determining Plaintiff's residual functional capacity, Plaintiff failed to carry her burden of establishing that such evidence precluded her from returning to her past relevant work.

In addressing Plaintiff's alleged error concerning the opinion of the two state agency medical consultants, the Magistrate Judge found that the ALJ "briefly" explained in her decision the weight given to the opinions of these consultants. M&R 12. The ALJ noted that, other than the finding by the state agency medical consultants that Plaintiff's difficulties in social functioning are moderate, the ALJ adopted their functional assessment regarding the other three functional limitation categories. However, the basis for the ALJ's adoption of the testimony of the medical expert–that Plaintiff is only mildly limited in social functioning–was that the medical expert had the opportunity to review the entire record, including evidence submitted after the state agency medical consultants

4

rendered their opinion.  Moreover, the Magistrate Judge–relying on *Hammond v. Barnhart*–noted that "The ALJ's failure to mention a particular piece of evidence does not necessarily mean that she failed to consider it." 124 Fed.Appx. 847, 851 (5th Cir. 2005); M&R 12.  In addition, the ALJ referenced the ability to observe the demeanor and testimony of Plaintiff at the administrative hearing.  For these reasons, the Magistrate Judge concluded that the ALJ properly evaluated the opinions of the two state agency medical consultants and the medical expert.

Plaintiff objects to the Memorandum and Recommendation.  She argues that the Magistrate Judge did not address whether the ALJ failed to apply the appropriate legal standards of 20 C.F.R. §§ 404.1527(f) and (d) to weigh the opinions of the state agency medical consultants and the conflicting opinion of the medical expert regarding the severity of Plaintiff's mental impairment.  Specifically, she argues that if the ALJ had properly weighed the state agency medical consultants' qualifications as mental health professionals with expertise in Social Security disability evaluation, their opinion would have been entitled to greater weight than the opinion of the medical expert, a family physician.  She also argues  that the Magistrate Judge improperly engaged in post hoc rationalization of the ALJ's rejection of the state agency medical consultants' opinion in favor of the medical expert's opinion.  She further argues that *Hammond v. Barnhart* turns on a pivotal error of law and should not be followed by this Court.  124 Fed.Appx. 847 (5th Cir. 2005).  Finally, she argues that, according to *Loza v. Apfel*, an erroneous second-step finding that a claimant's mental impairment is not severe does not become "irrelevant" if the ALJ finds that other impairments are severe and moves to the remaining steps of the sequential evaluation process. 219 F.3d 378 (5th Cir. 2000).

## II.  Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and suffers a disability is entitled to receive disability insurance benefits.  42 U.S.C. § 423(a)(1).  Each aged, blind or disabled individual who meets certain income and resources limitations is entitled to receive supplemental security income.  42 U.S.C. § 1382(a).  The term "disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  A person shall be determined to be disabled only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

## III.  Standard of Review

The Court reviews *de novo* those portions of the Memorandum and Recommendation to which objection is made.  *See* 28 U.S.C. § 636(b)(1).  Such a review means that the Court will examine the entire record and will make an independent assessment of the law.  However, in examining the Commissioner's decision denying disability insurance benefits, the Court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Martinez v. Chater*,

64 F.3d 172, 173 (5th Cir. 1995). In this case, Plaintiff objects on the basis of a lack of substantial evidence to support the decision of the ALJ.

"Substantial evidence is more then a scintilla, less then a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. Four elements are weighed by the Court in determining whether the Commissioner's decision is based on substantial evidence: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience. *Id*. at 174. While a *de novo* review may result in the Court reaching a different ultimate conclusion, conflicts in the evidence are to be resolved by the Commissioner. *Id*.

### IV.  Sequential Evaluation Process of Disability and Burden of Proof

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to...last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has developed a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. To determine whether a claimant is disabled, the ALJ uses the five-step sequential evaluation process to consider whether: (1) the claimant is performing substantial gainful activity; (2) the claimant has a "severe impairment"; (3) the claimant's impairment meets or medically equals one listed in Appendix 2, Subpart P, Regulations No. 4; (4) the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform

7

past relevant work, whether he or she can make an adjustment to other work in light of his or her age, education, work experience, and residual functional capacity. *Langley v. Barnhart*, 213 Fed.Appx. 325, 326 (5th Cir. 2007). The claimant bears the burden of proof on the first four steps, including the inability to perform former work. *Id*. at 326. At step five, however, the burden shifts to the Commissioner to show that the claimant is capable of performing other work available in significant numbers in the national economy. *Id*.

### V. Assessment of Plaintiff's Evidence of Mental Impairments

Plaintiff complains that the Magistrate Judge erred in not addressing whether the ALJ failed to apply the appropriate legal standards of 20 C.F.R. §§ 404.1527(f) and (d) to weigh the opinions of the state agency medical consultants and the conflicting opinion of the medical expert regarding the severity of Plaintiff's mental impairment. Thus, the Court will begin with a review of the medical evidence regarding Plaintiff's mental impairment.

On June 19, 2003,[2] Plaintiff complained to her treating primary care physician, Dr. Amanda Chavez, of experiencing depression, mood swings and difficulty sleeping. Tr. 214. The treating physician prescribed Prozac and Elavil and noted that Plaintiff was still awaiting an appointment with the pain clinic. Tr. 215. In July 2003, after reporting that Prozac was not working, she was switched to Paxil. Tr. 207. On August 29, 2003, Plaintiff reported that Paxil was helping a little. Tr. 196. Dr. Chavez noted that Plaintiff's depression was not controlled and increased the Paxil to 40mg and also prescribed Flexaril for insomnia. Tr. 197.

---

[2]There is a discrepancy in the dates used in the Magistrate's Memorandum and Recommendation for Plaintiff's appointments with Dr. Chavez. Sometimes the typewritten date in the medical report is used, and sometimes the handwritten date is used. For the sake of consistency, this order follows the Magistrate's use of dates.

On August 13, 2003, Plaintiff had an appointment at the University Health Pain Management Clinic with pain management resident Frederic Wile, M.D., and supervising physician Somayaji Ramamurthy, M.D., for evaluation of back pain.  Plaintiff filled out a questionnaire (the Beck Depression Inventory), in which she indicated a history of depression.  Tr. 201.  Her Beck Scale score was 52.  Tr. 200.  She also stated that she had thoughts of killing herself, but did not have a plan.  Tr. 202.  She further stated that she had never been hospitalized for psychiatric problems, and that she was not currently under the care of a psychiatrist.  Tr. 201.  As a result of her answers to the questionnaire, she was referred for a psychiatric consultation for depression.  Tr. 200.

On August 20, 2003, she underwent a psychosocial assessment at the Center for Health Care Services (CHCS) by clinician E. Padilla, M.A., in which she was diagnosed with a major depressive disorder[3], GAF 66.[4]  The Brief Psychiatric Rating Scale showed that Plaintiff was rated "moderately severe" for somatic concern and depression, and "moderate" for anxiety, hostility, and elevated mood.  Tr. 168.  Plaintiff was rated as "mild" for guilt, tension, and unusual thought content.  Tr. 168.  Plaintiff was rated "very mild" for suicidality.  Tr. 168.  Padilla scheduled her for a psychiatric evaluation at CHCS in two months.  Tr. 173.

Meanwhile, the Commissioner's State agency arranged a consultative psychological evaluation for Plaintiff with a licensed psychologist, Bradford Brunson, Ph.D., on September 30, 2003.  Tr. 126.  Dr. Brunson noted that Plaintiff's mood was anxious and depressed.  Tr. 128.  Dr.

---

[3]The word "major" in "major depressive disorder" is a medical term and does not, in and of itself, require us to consider the disorder "severe" within the meaning of the law.  *Hammond v. Barnhart*, 124 Fed.Appx.847, 852 (5th Cir. 2005).

[4] The Global Assessment of Functioning (GAF) is a hundred-point scale used as Axis V of DSM -IV to assess a client's recent and current levels of social, psychosocial, and occupational functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000).

Brunson observed that Plaintiff demonstrated an apprehensive manner and problems in attention during the examination. *Id*. Plaintiff's thought processes were characterized by distracted thinking. *Id*. Evaluation of cognitive processes indicated that Plaintiff's attention and concentration skills were mildly impaired. *Id*. She was oriented for person, place, and time. *Id*. Immediate, recent, and remote memory were intact. *Id*. Plaintiff's intellectual ability was estimated as being in the average range. *Id*. There was no indication of notable decline of intellectual ability. *Id*. Abstracting ability appeared to be normal. *Id*. Computational skills were judged to be within normal limits. *Id*. There was no obvious evidence of other cognitive deficits typically associated with brain dysfunction. *Id*.

Dr. Brunson diagnosed Plaintiff with dysthymic disorder[5], late onset and generalized anxiety disorder. Tr. 130-131. He placed her GAF at 55, with the highest GAF in the past year at 65. Tr. 131. According to the Diagnostic and Statistical Manual of Mental Disorders, 4th edition (DSM-IV), a GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning; a GAF of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. Tr. 18.

Two weeks after her psychological evaluation by Dr. Brunson, on October 16, 2003, Plaintiff saw CHCS staff psychiatrist Fermin Sarabia, M.D., for an initial psychiatric assessment. Tr. 161-165. Dr. Sarabia diagnosed Plaintiff with major depressive disorder, moderate, and substance abuse, in remission, with a GAF of 30. Tr. 164. A GAF of 30 is defined in the DSM-IV as behavior that

---

[5]Dysthymia is a chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness. Stedmans Medical Dictionary (27th ed. 2000).

is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas.  Tr. 19.  Dr. Sarabia prescribed Paxil and Elavil. Tr. 164.  He recorded Plaintiff's complaints of depressed mood, irritability, decreased energy, decreased interest, insomnia, suicidal thoughts, and hopelessness.  Tr. 162.  He noted no psychotic symptoms and no suicide attempts.  Tr. 163.  He further noted in the mental status examination that Plaintiff was downcast, in severe pain, with a depressed affect.  Tr. 163.  In contrast to the diagnoses by Dr. Padilla and Dr. Brunson, Dr. Sarabia's diagnosis of Plaintiff indicated a much more severe mental limitation.

In her decision, the ALJ found that the mental status examination findings as described by Dr. Sarabia were unclear or inconsistent with regard to the topic of suicide and did not correspond to a GAF of 30 as defined in the DSM-IV.  Tr. 19.  The ALJ further questioned the dramatic change in Plaintiff's condition from the two preceding evaluations in August and September 2003.  *Id.*  The ALJ chose to give this evaluation less weight than that given to the two prior mental evaluations because of its internal inconsistency and because of its marked inconsistency with two recent prior examinations.  *Id*.

In February 2004, Plaintiff returned to see her treating physician, Dr. Chavez, and reported being out of medicine.  Tr. 185-186.  In her assessment, Dr. Chavez noted Plaintiff's depression and insomnia.  Tr. 186.  Elavil was restarted.  Tr. 186.  At Plaintiff's next appointment with Dr. Chavez, on April 30, 2004, Dr. Chavez prescribed her a refill on Paxil.  Tr. 183.  In July 2004, Plaintiff reported trouble sleeping.  Tr. 180.  Later that month, Plaintiff again reported depression and anxiety and complained that Paxil was not working.  Tr. 257-258.  Dr. Chavez referred her to a psychiatrist and started her on Zoloft.  Tr. 258.  On October 28, 2004, Plaintiff reported increased stress and

insomnia, so Dr. Chavez increased the dosage of Elavil.  Tr. 251-252.  In January 2005, Dr. Chavez

increased Plaintiff's Zoloft to address her continuing complaints of depression.  Tr. 351-352.[6]  A

report by another CHCS provider on June 27, 2005 noted Plaintiff's depressed mood, but no visual

or auditory hallucinations or suicidal ideation.  Tr. 333-334.  On July 5, 2005, at another appointment

at CHCS, Plaintiff again reported depression and anxiety.  Tr. 331-332.

### VI.  The ALJ Properly Weighed the Opinion of the State Agency Medical Consultants

On October 16, 2003, a Psychiatric Review Technique Form was completed by Dr. Norvin

Curtis, a psychologist and a state agency medical consultant.  His findings were reviewed and

confirmed on December 16, 2003 by Dr. Leela C. Reddy, a psychiatrist and also a state agency

medical consultant.[7]  Tr. 134-151.  They both agreed that Plaintiff had  "medically determinable

impairments,"–dysthymia and generalized anxiety disorder–which did not "precisely satisfy the

diagnostic criteria" for a severe impairment, but which, nevertheless, necessitated an RFC

assessment.  Tr. 134, 137, 139.

Once it is determined that a claimant suffers from a "medically determinable mental

impairment," the ALJ must rate the degree of functional limitation resulting from the impairments

in accordance with 20 C.F.R. § 404.1520a(c), record those findings in his opinion in accordance with

---

[6]The evidence cited in the remainder of this paragraph can be found in the Supplemental Transcript attached to respondent's brief.

[7]The Court notes that it is not clear whether the two consultants reviewed the October 16, 2003 assessment by Dr. Sarabia in which he indicated Plaintiff's GAF was 30; however, Plaintiff did not address this issue at the hearing before the ALJ or in her brief.  Thus, it has been waived. An argument not raised before the district court is waived unless there are "exceptional circumstances" and addressing the issue is in the "interests of justice."  *Robinson v. Barnhart*, 183 Fed.Appx. 451,  455 (5th Cir. 2006)(quoting *Castillo v. Barnhart*, 325 F.3d 550, 553 (5th Cir. 2003)(internal quotations omitted).  Nevertheless, the ALJ did take Dr. Sarabia's assessment into consideration in her decision and expressly discounted it.  Tr. 19.

20 C.F.R. § 404.1520a(e)(2), and then determine the severity of the claimant's mental impairments in accordance with 20 C.F.R. § 404.1520a(d).  Here, since the state agency medical consultants determined that Plaintiff had mental impairments, 20 C.F.R. § 404.1520a ("Evaluation of mental impairments") was applicable.

The Psychiatric Review Technique Form assists the ALJ (here, the state agency medical consultants) with the requirement to "rate the degree of functional limitation resulting from the impairment" in four broad functional areas: (1) activities of daily living, (2) social functioning, (3) concentration and persistence or pace, and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The degree of limitation in the first three functional areas is rated on a five-point scale including: "none, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  The degree of the fourth functional area is rated on a four-point scale including: none, one or two, three, four or more.  *Id.*  "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."  *Id*. The regulation contains a presumption that if the claimant's limitation in the first three functional areas is rated as "none" or "mild" and the claimant's limitation in the fourth functional area is rated as "none," then the Social Security Administration will "generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1).

In this case, the state agency medical consultants found that Plaintiff is mildly restricted in activities of daily living, *moderately* restricted in maintaining social functioning, mildly restricted in maintaining concentration, persistence, or pace, and has had no episodes of decompensation.  Tr. 144.  Social functioning refers "to your capacity to interact independently, appropriately, effectively,

13

and on a sustained basis with other individuals." 20 C.F.R. § 404P, App. 1, § 12.00C.2. The ALJ adopted all of these findings except for the one involving Plaintiff's moderate social functioning; instead, the ALJ found the limitation on this particular functional area to be mild. Tr. 20. This was the only difference between the ALJ and the state agency medical consultants with regard to their findings of the severity of Plaintiff's mental impairments.

In the functional capacity assessment, the report further concluded that Plaintiff is able to "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings." Tr. 150. Drs. Curtis and Reddy also determined that the "mental limitations are not fully supported by [the evidence of record]." Tr. 150.

Plaintiff contends that the Magistrate Judge did not address whether the ALJ failed to apply 20 C.F.R. §§ 404.1527(f) & (d) in weighing the opinions of the state agency medical consultants and the medical expert. 20 C.F.R. §§ 404.1527(f) & (d)(1)-(5) establish the factors the ALJ must consider when evaluating any medical opinion. The 20 C.F.R. § 404.1527(d) factors include:

(1) Examining relationship...
(2) Treatment relationship...
(3) Supportability...
(4) Consistency...
(5) Specialization...

20 C.F.R. § 404.1527(d)(1)-(5).

The ALJ is not bound by any findings made by state agency medical consultants, but because state agency medical consultants are highly qualified physicians with expertise in Social Security disability evaluation, the ALJ must consider their findings as opinion evidence, except for the ultimate determination about whether an individual is disabled. 20 C.F.R. § 404.1527(f)(2)(I). The

ALJ evaluates the findings of state agency medical consultants by using factors such as medical specialty and expertise with Social Security rules, supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions.  Social Security Ruling (SSR) 96-6p states that an ALJ "may not ignore" the opinions of state agency medical and psychological consultants and "must explain the weight given to the opinions in their decisions."  1996 WL 374180.

Plaintiff relies on *Beasley v. Barnhart* for the proposition that if an ALJ does not cite or refer to 20 C.F.R. §§ 404.1527(f)and (d)(1)-(5) in her rejection of a medical opinion, then the ALJ did not apply those factors in weighing the medical opinion evidence.  191 Fed.Appx. 331 (5th Cir. 2006).  But *Beasley* concerned an ALJ's failure to apply those factors to a *treating* physician's opinion in the absence of reliable medical evidence from another treating or examining physician that would controvert the treating physician's opinion.  *Id*. at 334.  Under those circumstances, the only way an ALJ can reject the treating physician's opinion is by "perform[ing] a *detailed analysis* of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 336.  Moreover, whenever a treating physician's opinion is involved, the ALJ must "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. § 416.927(d)(2).

In this case, however, there was no treating physician's opinion of Plaintiff's mental impairments for the ALJ to assess; rather, the ALJ rejected the medical opinions of two nonexamining state agency medical consultants.  Since there was no rejection of a treating physician's opinion, the ALJ was required to explain in her decision the weight given to the opinions of the state agency medical consultants and the medical expert.  20 C.F.R. § 404.1527(f)(2)(ii), §

416.927(f)(2)(ii), and § 404.1527(f)(2)(iii).  While the ALJ was required to consider the 20 C.F.R.

§ 404.1527(d) factors in evaluating the medical opinions of the state agency medical consultants,

"there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence

he takes into account in making his findings."  *Hammond v. Barnhart*, 124 Fed.Appx. 847, 851 (5th

Cir. 2005).  Yet, while the ALJ does not have to list explicitly the § 404.1527 factors in her decision,

"§ 404.1527(f)(2) does require that the ALJ articulate the weight given to experts" such as state

agency medical consultants.  *Id*.  Consequently, the ALJ satisfied the requirement by making clear

that she was giving less weight to the opinion of the state agency medical consultants than to the

opinion of the medical expert:

> The undersigned's assessment of non-severe mental limitations is in conflict with the
> state level determination in only one of the "B" criteria: the state level determination
> that claimant's difficulties in social functioning rise to the level of "moderate" under
> the "B" criteria.  The undersigned gives more weight to Dr. Cox's assessment
> because she has had the opportunity to review the entire record, including evidence
> not before the state agency consultants, as well as the opportunity to consider
> claimant's demeanor and testimony at the hearing.

Tr. 20-21.  It is apparent from this passage that the ALJ was aware of her obligation to consider the

opinion of the state agency medical consultants, and that she did so, albeit briefly.  Although the ALJ

did not explicitly apply the 20 C.F.R. § 404.1527(d) factors, her opinion reflects the decision to give

no weight to the opinion of the state agency medical consultants regarding the only category in which

they and the ALJ differed:  Plaintiff's moderate social functioning limitation.  Therefore, it was not

necessary–as Plaintiff claims–for the Magistrate Judge to mention the 20 C.F.R. § 404.1527(f)(d)(ii)

provision requiring evaluation of the state agency medical consultants' opinion  "using the relevant

factors in paragraphs (a) through (e)," or to discuss whether the ALJ's decision contained proof that

she applied the 20 C.F.R. § 404.1527(d) factors to weigh the opinion of the state agency medical

consultants and that of the medical expert, because such proof was not required in her decision in the first place.  The factors are only meant for the ALJ to consider–not list explicitly–in her decision, unless the ALJ is rejecting a treating physician's opinion in the absence of reliable medical evidence to the contrary, which was not the case here.  *Beasley v. Barnhart*, 191 Fed.Appx. at 336.  Also, "the ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it."  *Hammond*, 124 Fed. Appx. at 851.  Therefore, this objection has no merit.

### VII.  Even if the ALJ Did Not Properly Weigh the Opinion of the State Agency Medical Consultants, It Was Harmless Error

In the alternative, even if the ALJ did not apply the proper legal standard to weigh the opinions of the state agency medical consultants and the medical expert, reversal is appropriate only if the applicant shows prejudice arising from the ALJ's error.  *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).  "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."  *Hammond*, 124 Fed.Appx. at 851 (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988));  Fed.R.Civ.P. 61.  Procedural errors constitute bases for remand only where they cast into doubt the existence of substantial evidence to support the ALJ's decision.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).

Plaintiff argues that the Magistrate Judge's conclusion that the ALJ's decision is supported by substantial evidence is "a wholly different inquiry" than whether the ALJ's failure to apply a governing regulation–here the 20 C.F.R. § 404.1527(d) factors–caused prejudice. Plaintiff further contends that she need not establish unequivocally that a different decision would have been reached; she simply must show that the result might have changed.

However, the cases Plaintiff cites do not apply here.  In *Newton v. Apfel*, the Fifth Circuit

held that the ALJ had prejudiced the plaintiff by erroneously rejecting the treating physician's opinion without requiring clarification from the physician as to gaps in the medical record or undertaking the requisite detailed analysis of the opinion. 209 F.3d 448, 456 (5th Cir.2000). Again, this case does not involve a treating physician's opinion, and, therefore, does not require the ALJ to include in her decision a detailed analysis of any medical opinion the ALJ rejects. The other two cases Plaintiff cites involved procedural errors that affected the plaintiff's substantial rights. In *Hall v. Schweiker*, the Fifth Circuit held that the Secretary's failure to comply with the Social Security Administration's own ruling requiring an explanation of the effect of the plaintiff's waiver of a right to personally appear had prejudiced the plaintiff. 660 F.2d 116, 119 (5th Cir. 1981). Similarly, in *Gullet v. Chater*, the District Court held that the ALJ had prejudiced the plaintiff by not properly informing him of his right to counsel for the hearing. 973 F. Supp. 614, 621 (E.D. Tex. 1997). Since the plaintiff showed that counsel could have adduced additional evidence that might have altered the result, the plaintiff's waiver of counsel was deemed invalid and prejudicial. *Id*. Nevertheless, in this case, the ALJ was not bound by the opinion of the state agency medical consultants and had the right to reject it without having to explicitly list the 20 C.F.R. § 404.1527(d) factors in her decision. Therefore, there was no prejudice to the Plaintiff, as there was in these other cases.

Significantly, Plaintiff ignores the fact that–despite the state agency medical consultants' determination that Plaintiff is moderately limited in her social functioning–the state agency medical consultants themselves questioned the medical support in the record for their determination.[8] Moreover, although Drs. Curtis and Reddy–the state agency medical consultants–are both mental

---

[8]The state agency medical consultants found that "[m]ental limitations are not fully supported by [the evidence of record]."

health experts and Dr. Alice Cox is not, the ALJ is not bound by their opinion.  Their opinion was based on evidence existing as of October 16, 2003, primarily Dr. Brunson's thorough examination and assessment.  He diagnosed a dysthymic disorder, and concluded that Plaintiff's psychosocial stressors are moderate.  At no point did he find that her difficulties in social functioning were moderate.  Drs. Curtis and Reddy did not identify what evidence from Dr. Brunson's report or from other records in evidence warranted their conclusion that Plaintiff is so limited.  A state agency medical assessment "can be given weight only insofar as [it is] supported by the evidence in the case record."  SSR 96-6p, 1996 WL 374180, at *2.

However, the record is consistent with the opinion of Dr. Alice Cox, the family physician and medical expert who testified that there was little objective evidence to support Plaintiff's complaint of a severe mental impairment.  Tr. 321, 323.  She noted that Plaintiff has never been hospitalized for psychiatric treatment and was not under the care of a psychiatrist.  Tr. 323.  Dr. Cox went so far as to say that this case either involved malingering or a somatization type disorder.  Tr. 324.  Dr. Cox's testimony as to minimal objective findings justifies the ALJ's decision to adopt Dr. Cox's conclusion regarding Plaintiff's non-severe mental limitation over the state consultants' opinion to the contrary.

Additionally, Plaintiff's own statements provide evidence that her limitations in social functioning are no more than mild.  During her August 2003 assessment at the Center for Health Care Services, she stated that she has a few friends and acquaintances, and that the quality of her relationships is stable and supportive.  Tr. 171.  Again, in June 2005, after the evaluation by Drs. Curtis and Reddy, Plaintiff reported having close friends and acquaintances and a stable relationship with her partner.  Tr. 337.  20 C.F.R. § 404P, App. 1, § 12.00C.2 states that social functioning

includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers.  Examples of impaired social functioning include: a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation.  No objective evidence demonstrates that Plaintiff suffers from impaired social functioning.

**VIII.  The Magistrate Judge's Post-hoc Rationalization of the ALJ's Rejection of the State Agency Medical Consultants' Opinion was Harmless Error**

Plaintiff argues that the Magistrate Judge improperly engaged in post hoc rationalization of the ALJ's rejection of the state agency medical consultants' opinion in favor of the medical expert's opinion.  The Magistrate Judge did err in not addressing the ALJ's partially flawed reasoning for supporting Dr. Cox's opinion; however, this was harmless error because Plaintiff's substantial rights were not affected since there is sufficient evidence in the rest of the ALJ's decision and the record to support the ALJ's decision.  *Hammond v. Barnhart*, 124 Fed.Appx at 851.

In comparing the weight accorded to the opinion of Dr. Cox, the medical expert, and the opinion of Drs. Curtis and Reddy, the state agency medical consultants, the ALJ stated in her decision:

> The undersigned gives more weight to Dr. Cox's assessment because she has had the opportunity to review the entire record, including evidence not before the state agency consultants, as well as the opportunity to consider claimant's demeanor and testimony at the hearing.

Tr. 20-21.  Plaintiff is correct in arguing that these two reasons are unpersuasive because 1) the additional evidence Dr. Cox was able to review–five treatment records belonging to the treating primary care physician, Dr. Chavez–did not address the effect of Plaintiff's depression and anxiety

on the degree of her social functioning limitation; and 2) the ALJ is not supposed to ask or allow the medical expert to conduct any type of physical or mental status examination of the claimant during the hearing.  HALLEX I-2-6-70, 1993 WL 751901 (Sept. 9, 2005)[9].  It can be inferred from the HALLEX rule that it was improper for Dr. Cox to incorporate any of Plaintiff's demeanor or testimony at the hearing into her medical opinion, and that the ALJ should not have used that as a reason to support Dr. Cox's opinion.[10]

Nevertheless, Dr. Cox referred to Plaintiff's testimony only once, and the record and other parts of the ALJ's decision support Dr. Cox's opinion:

> Dr. Cox testified that there is very little objective evidence in claimant's record.  In particular, claimant's allegations of depression are recitations of her subjective complaints, with no verification.  There is very little evidence of psychiatric care, psychiatric diagnoses and no evidence of hospitalizations . . . . *Dr. Cox testified that based on the medical records, claimant does not have a severe mental impairment*. The undersigned finds that Dr. Cox's testimony is credible and gives it significant weight.

Tr. 19-20 (emphasis added).  Here, the ALJ expressed her agreement with Dr. Cox's conclusion based on Dr. Cox's review of the medical records–not Plaintiff's demeanor or testimony at the hearing–and made clear she believed Dr. Cox's testimony was consistent with the record, and,

---

[9]HALLEX is the Hearings, Appeals, and Litigation Law Manual.  It "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels."  HALLEX I-1-0-1, 2005 WL 1863821 (June 21, 2005). The Fifth Circuit has stated:  "While HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even when the internal procedures are more rigorous than otherwise would be required.'" *Newton v. Apfel*, 209 F.3d 448, 459 (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)).

[10]In her testimony, Dr. Cox stated: "But I find no credible evidence either in her testimony or in the record to verify these complaints." Tr. 324.

therefore, credible. Consequently, even if the Magistrate Judge engaged in post hoc rationalization of the ALJ's rejection of the state agency medical consultants' opinion in favor of the medical expert's opinion, it was harmless error because this part of the ALJ's explanation adequately supports the ALJ's decision to reject one medical opinion for another.

Furthermore, the Fifth Circuit has addressed the issue of post hoc rationalization in two Social Security disability benefits cases. *Moore v. Social Security Administration*, 153 Fed.Appx. 945, 946 (5th Cir. 2005); *Muscarella v. Barnhart*, 117 Fed.Appx. 333, 334 (5th Cir. 2004). Both cases suggest that the Fifth Circuit treats post hoc rationalization in the same way it treats harmless error; that is, unless a court's post hoc rationalization affects the plaintiff's substantial rights, it cannot serve as a basis for reversal. Also, both cases call into question Plaintiff's argument that the Magistrate Judge actually engaged in post hoc rationalization.

In *Moore*, the plaintiff argued that the district court had engaged in post hoc rationalization by affirming the ALJ's decision based upon grounds not relied upon or considered by the ALJ. 153 Fed.Appx. at 946. Moore claimed that the ALJ did not analyze his liver condition as to whether that condition met the requirements of a particular listed impairment. *Id.* However, without mentioning that listed impairment, the ALJ indicated that Moore's severe impairments did not meet or medically equal a listing. *Id.* Accordingly, while the Fifth Circuit noted that the ALJ's reasoning could have been clearer, it stated that "[p]rocedural perfection in administrative proceedings is not required." *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Moreover, the Fifth Circuit stated: "Even assuming the district court engaged in impermissible 'post hoc rationalization,' Moore has failed to show that his substantial rights have been affected." *Id*.

In contrast to *Moore*, the Magistrate Judge here affirmed the ALJ's decision upon grounds

relied upon by the ALJ; the problem is that not all of those grounds were proper for the ALJ to consider in her decision (*e.g.*, the Plaintiff's demeanor and testimony at the hearing). Nevertheless, it was proper for the ALJ to rely upon Plaintiff's medical records for her reasoning, and it was proper for the Magistrate Judge to affirm the ALJ's reasoning with regard to her reliance on the medical records.

The second case, *Muscarella*, had a similar outcome to *Moore*. 117 Fed.Appx at 334. There, the plaintiff's objection was that the Commissioner, in its briefing, had engaged in post hoc rationalization by discussing medical evidence which was in the record, but nevertheless was not specifically discussed by the ALJ in his decision. *Id*. In holding that this objection was devoid of merit, the Fifth Circuit stated: "There is no rule that a party in these circumstances is prohibited from discussing evidence in the record unless that evidence is specifically cited or relied upon by the ALJ in his decision." *Id*.

Here, in affirming the ALJ's decision, the Magistrate Judge referred to the ALJ's reliance on Dr. Cox's testimony as to there being little objective evidence to support Plaintiff's complaint of a severe impairment, which the Magistrate Judge noted was supported by the record. Thus, unlike *Muscarella*, the Magistrate Judge did not discuss evidence that was in the record, but which the ALJ did not address in her decision. Even if the Magistrate Judge had done so, *Muscarella* makes clear that there is no rule against doing that.

Therefore, the differences between these cases and the instant case indicate that the Magistrate Judge did not engage in post hoc rationalization. While the Magistrate Judge may have erred in affirming the ALJ's decision without making clear that the ALJ's reliance on Dr. Cox's testimony about Plaintiff's demeanor and testimony was improper, the Magistrate Judge did make

clear that Dr. Cox's testimony was consistent with the medical records, which provided the ALJ with substantial evidence for her decision.   The ALJ may also have erred by incorporating into her rationale Dr. Cox's ability to review the five treatment records that the state agency medical consultants did not review–but which also did not pertain to Plaintiff's social functioning limitation; however, there is sufficient evidence in the record to support the ALJ's decision (and the Magistrate Judge's decision to affirm).    Finally, even if the Magistrate Judge engaged in post hoc rationalization, Plaintiff has not demonstrated how that has affected her substantial rights because there is sufficient evidence in the record and in the ALJ's decision to support Dr. Cox's testimony as to Plaintiff's lack of a severe mental impairment.

## IX.  *Hammond v. Barnhart* **Is Applicable to This Case**

Plaintiff further argues that *Hammond v. Barnhart*, a case the Magistrate Judge relied on in his Memorandum and Recommendation, can be distinguished from this case, and that *Hammond* turns on a pivotal error of law and should not be followed by this Court in order to prevent the perpetuation of the alleged error.  124 Fed.Appx. 847 (5th Cir. 2005).  This Court declines to review the  alleged pivotal error of law committed by the Fifth Circuit, but will address the allegedly "critical distinction" Plaintiff raises.

As the Magistrate Judge noted, *Hammond* shares some similarities with this case.  There, the plaintiff argued that the ALJ failed to consider the opinions of the state agency medical consultants in the manner 20 C.F.R. § 404.1527(f)(2) requires.[11]  *Id.* at 851.  The Fifth Circuit agreed that 20

---

[11] That regulation requires that "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . ."  20 C.F.R. § 404.1527(f)(2)(ii).

C.F.R. § 404.1527(f)(2) does require that the ALJ articulate the weight given to these experts and that the ALJ had, therefore, erred in failing to provide such an explanation. *Id*. However, the Fifth Circuit considered this harmless error because the opinions expressed by the state agency medical consultants seemed to confirm those of the other medical experts. *Id*.

Plaintiff contends that while the *Hammond* Court's finding that the opinions of the state agency medical consultants were *consistent* with the medical expert's testimony, the "critical distinction" is that, in this case, the opinion of the state agency medical consultants is at odds with the medical expert's testimony. Nevertheless, in *Hammond*, the Fifth Circuit also considered the alternative possibility of what it would do if the opinions of the state agency medical consultants were interpreted to be in conflict with the opinion of the medical expert, as is the case here. The Fifth Circuit stated:

> Our third observation is that if, in the alternative, one believed the forms filled out by Boulos [state agency medical consultant] and affirmed by Sharihan [state agency medical consultant] undermined the ALJ's finding of insufficient severity, they would not do so to the degree necessary for us to overturn the ALJ's determination on substantial evidence review. The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision. In ruling on the severity of Hammond's condition, he likely made the same fact-based judgments that form the basis of our refusal to overturn his decision on substantial evidence review.

124 Fed.Appx. at 851-852. Thus, *Hammond* is applicable to this case.

Here, the opinion of Drs. Curtis and Reddy also does not directly undermine the ALJ's finding of insufficient severity of Plaintiff's mental impairment to the degree necessary to overturn the ALJ's determination on substantial evidence review. Most problematic for Plaintiff is the comment by Drs. Curtis and Reddy indicating that Plaintiff's "mental limitations are not fully

25

supported by the evidence of record." Tr. 150.  In other words, the opinion of Drs. Curtis and Reddy and the opinion of Dr. Cox, the medical expert, are not diametrically inconsistent.  Moreover, *Hammond* makes clear that even if the ALJ did not properly articulate the weight given to the opinion of Drs. Curtis and Reddy, this is harmless error because substantial evidence in the record supports the ALJ's finding that Plaintiff does not have a severe mental impairment since the state agency medical consultants themselves equivocated as to their determination that Plaintiff suffered from a severe mental impairment.

While some evidence in the record indicates that Plaintiff's mental impairment is severe (*e.g.*, Plaintiff's symptoms of depression and GAF of 30), other evidence suggests that it is not (*e.g.*, GAF of 65).  As the Fifth Circuit observed in *Hammond*, this Court is precluded from reviewing the record *de novo*, and there is some evidence that points to a conclusion that differs from that adopted by the ALJ.  124 Fed.Appx. at 853.  However, as in *Hammond*, there is far more than a scintilla of evidence in the record that could justify the ALJ's finding that Plaintiff's mental impairments were not severe disabilities within the meaning of the Social Security Act.  *Id*.  Thus, the ALJ's conclusion that Plaintiff's depression is not severe cannot be overturned.

### X. The ALJ Was Not Required To Make Explicit Factual Findings Regarding Plaintiff's Mental Residual Functional Capacity Because her Mental Impairments Were Not Severe

Plaintiff relies on two Fifth Circuit cases to argue that the ALJ erred by not directly comparing Plaintiff's mental residual functional capacity (RFC) with the mental demands of her previous work and not making clear factual findings on that issue.  *Latham v. Shalala*, 36 F.3d 482, 284 (5th Cir. 1994); *Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988).  The Magistrate Judge's response to this argument was that while the ALJ remained obligated, despite the non-severity

finding, to consider the evidence of the degree of Plaintiff's mental condition in determining Plaintiff's RFC, Plaintiff failed to carry her burden of establishing that such evidence precluded her from returning to her past relevant work.  In particular, the Magistrate Judge emphasized the fact that Plaintiff, not the Commissioner (or the ALJ), maintains the burden of proof at the first four steps of the sequential evaluation process.  M&R 20.  This Court has determined that the ALJ was not required to make explicit factual findings regarding Plaintiff's mental RFC for the reasons stated below.

First, although the Magistrate Judge did not address the two cases cited by Plaintiff, both can be distinguished from the instant case.  In *Latham*, the plaintiff was a Vietnam veteran who suffered from "multiple health problems including osteoarthritis, degenerative disc and joint disease, migraine headaches, and mental and emotional disorders."  36 F.3d at 483.  The Fifth Circuit remanded the case for three reasons: 1) the plaintiff had provided additional, material evidence to the district court in the form of a Department of Veterans Affairs Rating Decision which concluded he was eligible for Veterans Affairs disability benefits; 2) the ALJ had not considered the possibility that the plaintiff's pain and other symptoms might result from his mental condition; and 3) the ALJ had relied on generic classifications ("light and medium work") in determining that the plaintiff could perform his past employment.  *Id* at 483-484.

While the severity of the plaintiff's physical and mental impairments was not made explicit in the opinion, it could be inferred that the ALJ had found that the plaintiff had severe mental impairments. *See id.* at 484.  Consequently, since the plaintiff had severe mental impairments, it was logical for the Fifth Circuit to state that "when making a finding that an applicant can return to his prior work [step four of the sequential evaluation process], the ALJ must directly compare the

27

applicant's remaining functional capacities with the physical and mental demands of his previous work." *Id*. at 484. The Fifth Circuit was simply reiterating the requirements of 20 C.F.R. § 404.1520(e), which describes the step four residual functional capacity analysis the ALJ has to undertake.

In contrast, the ALJ in the instant case found that Plaintiff had severe physical impairments and nonsevere mental impairments–the opposite combination as the plaintiff in *Latham*. Thus, at most, *Latham* stands for the proposition that if the ALJ finds that a plaintiff has a severe mental impairment, the ALJ has to make explicit factual findings in her decision regarding the plaintiff's mental RFC. Here, however, there was no reason to do that since the ALJ had determined that Plaintiff had non-severe mental impairments. In the absence of authority that requires the ALJ to make explicit factual findings under such circumstances, this Court declines to extend *Latham* to this case.

The second case, *Abshire v. Bowen*, is not on point because the only impairment the plaintiff had was a physical one–a serious neck injury. 848 F.2d at 641. Although the Fifth Circuit noted that it could have remanded the case for the ALJ's failure to analyze the duties of the plaintiff's past relevant work, the reason it ultimately remanded the case was because there was overwhelming evidence that the plaintiff's physical impairment precluded him from returning to his former job, despite the ALJ's conclusion to the contrary. *Id*. Thus, *Abshire* is not relevant to this case.

The most recent Fifth Circuit case to address the issue of the combined impact of a plaintiff's impairments is *Beck v. Barnhart,* 205 Fed.Appx. 207 (5th Cir. 2006). There, the plaintiff's severe impairments were all physical ones: hypertension, osteoarthritis, GE reflux, and obesity; however, the ALJ did not find that any of them individually, or in combination, was sufficiently severe to

qualify her for Supplemental Security Income benefits. *Id*. at 210. In response, the plaintiff alleged that "the ALJ did not properly evaluate the combined impact of her impairments and as a result underestimated the severity of her disability." Id. In its analysis of this issue, the Fifth Circuit stated:

> We have held on numerous occasions that in making a disability determination, the examining ALJ must analyze the disabling effect of both the claimant's ailments individually and for their cumulative impact. [Internal citations omitted] Additionally, a finding of nonseverity based upon the failure to examine the cumulative impact of a claimant's alleged impairments is not *per se* supported by substantial evidence. [Internal citations omitted]

*Id*. at 211. This Court interprets this language as a reference to step two of the sequential evaluation process (the impairment severity determination), not step four (the RFC and past relevant work analysis). Moreover, in *Beck*, the Fifth Circuit affirmed the ALJ's decision to deny the plaintiff disability benefits because the ALJ had relied on the proper evidence to determine that the plaintiff had severe impairments that did not combine to limit her functional capacity. *Id*.

However, *Beck* did cite two sections of the C.F.R. that are worth noting:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will *consider* the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. §§ 404.1523 and 416.923 (emphasis added). While the ALJ did not explicitly discuss the combined impact of Plaintiff's severe physical impairments and non-severe mental impairments, "the

ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it." *Hammond*, 124 Fed.Appx. at 851.   Therefore, even if–as the Magistrate Judge stated–the ALJ was required to consider Plaintiff's mental RFC despite the ALJ's non-severity finding as to Plaintiff's mental impairments–the Court can presume the ALJ did so even in the absence of the ALJ's explicit consideration of the issue in her decision.   Moreover, since the ALJ found that Plaintiff's mental impairments–depression and anxiety–were non-severe, it is unlikely that the ALJ would have found them to have a significant impact in combination with Plaintiff's severe physical impairments (which the ALJ determined were not credible in the first place, and which Plaintiff has not appealed).   Tr. 25.   Thus, no authority requires an ALJ to make explicit factual findings regarding a plaintiff's mental RFC even when the ALJ has determined the plaintiff's mental impairments are non-severe.

### XI.   Although The Magistrate Judge's Standard for Remand Was Incorrect, This Case Does Not Warrant Remand

Plaintiff argues that the Magistrate Judge erred in stating that "the failure to find that an impairment is severe can lead to remand *only* when the ALJ fails to find that any impairment is severe, and the case was adjudicated at the second step of the sequential evaluation process; when the determination is made at steps three, four, or five of the process, an ALJ's failure to find that a particular impairment is severe does not warrant remand."   M&R 18 (emphasis added).   Plaintiff is correct in contending that the Magistrate Judge's statement is not fully supported by *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000).   Also, the Magistrate Judge's standard for remand is not supported by the Fifth Circuit cases cited in the Memorandum and Recommendation.   *See Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (The Fifth Circuit affirmed the ALJ's step four finding that

plaintiff, despite his back pain, could perform his past relevant work as a truck driver); *Jones v. Bowen*, 829 F.2d 524, 527, n.1 (5th Cir. 1987) (The Fifth Circuit affirmed the ALJ's decision that none of plaintiff's alleged mental or physical impairments prevented plaintiff from performing past relevant work.).

The Magistrate Judge noted that Plaintiff's application for benefits was denied at the fourth step of the evaluation process, and that, in light of the finding that Plaintiff did suffer from a severe physical impairment, it was irrelevant that the ALJ did not specifically find that her mental impairment itself was a severe impairment under the *Stone* standard.[12]  M&R 18-19.

Plaintiff argues that the Magistrate Judge's standard for remand is contradicted by *Loza v. Apfel*, which involved a claimant who alleged both physical and mental impairments–like Plaintiff–and which was remanded by the Fifth Circuit. 219 F.3d at 398.  The Fifth Circuit remanded the case despite the fact that the ALJ had moved beyond the second step of the evaluation process regarding the plaintiff's physical impairments, but had not moved beyond the second step regarding the plaintiff's mental impairments (that is, the ALJ had not found the plaintiff had a severe mental impairment, as in the instant case).  While this may seem to support Plaintiff's argument, *Loza* is not entirely on point because this was not the only reason the Fifth Circuit had for remanding the case.

Specifically, the Fifth Circuit remanded *Loza* because, among other reasons, the Court held that substantial evidence in the record did not support the ALJ's step two finding that the plaintiff did *not* have a severe mental impairment.  219 F.3d at 394.  The plaintiff had also alleged physical

---

[12]  The *Stone v. Heckler* standard is: "[A]n impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  752 F.2d 1099, 1101 (5th Cir. 1985).

impairments, to which the ALJ incorrectly applied the Medical-Vocational Guidelines in step five and found he was not disabled (although the Fifth Circuit did not explicitly say that the ALJ had found the plaintiff had a severe physical impairment, in order to get to step five, the ALJ had to have found that the plaintiff had a severe physical impairment). *Id.* at 398. Thus, despite the Magistrate Judge's statement, it is possible for a case to be remanded even if the ALJ moved beyond the second step of the evaluation process. Nevertheless, because the Fifth Circuit had several reasons for remanding the case, its holding cannot fully support Plaintiff's argument either since the Fifth Circuit did not specify which reasons it considered more important. *Id.*

While *Loza* does not fully support either of the respective positions taken by Plaintiff or by the Magistrate Judge, this case does not warrant remand. There is substantial evidence in the record to support the ALJ's decision that Plaintiff is not disabled, specifically that Plaintiff does not have a severe mental impairment. Although the ALJ did not explicitly discuss her consideration of Plaintiff's non-severe mental impairment on Plaintiff's residual functional capacity, that does not mean the ALJ did not take it into consideration. Again, "the ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it." *Hammond*, 124 Fed.Appx. at 851. The ALJ thoroughly discussed the evidence for her conclusion that Plaintiff's depression and anxiety have such a minimal effect on Plaintiff that they would not be expected to interfere with her ability to work. Tr. 17-21. While maintaining that her difficulties in social functioning are moderate, Plaintiff does not dispute the conclusions that she is only mildly restricted in daily activities, has only mild difficulties in maintaining concentration, persistence and pace, and has had no episodes of deterioration or decompensation. Nothing in the record suggests that Plaintiff–with the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately

to changes in a routine work setting–cannot perform her previous work as a secretary, assembler, housekeeper, or cashier/floor stocker at a thrift store.  The Court finds that substantial evidence supports the ALJ's residual functional capacity assessment and the determination that Plaintiff has the ability to return to the work she previously performed.

## XI.  Conclusion

Plaintiff seeks review of the Commissioner's decision to deny her disability insurance benefits and Supplemental Security Income disability benefits and objects to the Memorandum and Recommendation of United States Magistrate Judge Primomo that the decision be affirmed.  She alleges that the ALJ should have found that she had a severe mental impairment, which would have caused the ALJ to continue the sequential evaluation process of disability regarding the mental impairment.  The record, including objective medical evidence and testimony at the administrative hearing, indicates that substantial evidence supported the ALJ's determination to deny Plaintiff's application for disability insurance benefits and Supplemental Security Income disability benefits.  Accordingly, the Court OVERRULES Plaintiff's objections to the Magistrate Judge's recommendation, ACCEPTS the Magistrate Judge's recommendation, and AFFIRMS the Commissioner's denial of Plaintiff's application for disability insurance benefits and Supplemental Security Income benefits.  The Clerk is instructed to close this case.

SIGNED this 15th day of June, 2007.


_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE